IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 3, 2004 Session

## STATE OF TENNESSEE v. JOHN MARK BURNS

**Appeal from the Criminal Court for Carroll County**
**No. 02CR-1868      C. Creed McGinley, Judge**

_____

**No. W2003-01464-CCA-R3-CD  - Filed September 21, 2004**

_____

While initially indicted on three counts of attempted first degree murder, the defendant, John Mark Burns, was convicted on three counts of attempted second degree murder. The trial court imposed sentences of eleven years for each offense, all of which are to be served concurrently. In this appeal of right, the defendant challenges the sufficiency of the evidence, he argues that the trial court erred in several of its instructions to the jury, and he contends that the sentence is excessive. Because the trial court erred in its application of certain enhancement factors, the defendant's sentences are modified to three concurrent nine-year terms. Otherwise, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed as Modified

GARY R. WADE, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, John Mark Burns.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On January 5, 2002, Deandre Walker, who had been acquainted with the defendant for approximately nine years and who had purchased marijuana from him regularly during that time, telephoned the defendant to arrange a meeting to purchase marijuana. According to Walker, he was accompanying two friends, Melvin Bosley and Belton Luter, who were unaware of the planned drug sale, to see a tattoo artist. When they approached Clarke's Grocery, the pre-arranged meeting site, he asked Luter, who was driving, to stop so that he could purchase a soft drink. Walker was seated in the front passenger seat of the vehicle and Bosley was in the back. A dark colored Chevrolet pickup truck emerged from the side of the store and stopped next to the Luter vehicle, passenger side to passenger side. According to Walker, he rolled down his window as the defendant, armed with

"a long gun," stepped out of his vehicle and fired at least three gunshots. Walker was shot in the right wrist, left middle finger, and shoulder. Luter, who was able to drive away despite being followed by the truck, stopped for help at a nearby residence.

Walker, hospitalized for more than a month, had six surgeries but, at the time of trial, was still unable to use his wrist. While conceding that he may have originally told police that he did not know the identity of his assailant, Walker nevertheless made a positive identification of the defendant at trial. During cross-examination, he denied having used cocaine or heroin on the day of the offense and further denied that there was a crock pot containing methamphetamine in the back of the Luter vehicle.

While in his residence on the night of the shooting, Timothy Gene Pillow heard a gunshot followed by "some vehicles racing up the road." Later, a black man knocked at his front door and informed him that his "buddy ha[d] been shot. The victim was lying on the porch. After telephoning 911, Pillow wrapped Walker's shoulder in a towel. He recalled that the victim repeated over and over, "'I can't believe he shot me.'"

Pillow's neighbor, Kenneth Wayne Bartholomew, heard three gunshots on the night of the shooting followed by a pause and then three more gunshots. When he looked outside, he observed Luter's sport-utility vehicle in front of the Pillow residence and then saw a dark colored, full-sized Chevrolet pickup truck turn next to his residence, back up, and then drive by his residence. Bartholomew heard someone in the truck yell, "'I don't give a [g.d.] I want to go back.'" Based on the timing of the gunshots, Bartholomew believed that the shots had been fired by a semi-automatic weapon.

Carroll County Sheriff's Deputy Timothy Meggs, who assisted in the investigation, did not question Walker, explaining that the victim was in too much pain; however, the deputy did recall that when he asked the victim whether he knew who fired the shots, he replied, "'No.'" According to Deputy Meggs, no illegal drugs or weapons were found in the Luter Explorer, which was damaged by bullet holes, and none of the three occupants were in the possession of illegal drugs. While acknowledging that there was a crock pot in the vehicle, the deputy recalled that it was empty. He also remembered finding part of the victim's middle finger in the floorboard. During cross-examination, he acknowledged that neither the victim nor his two companions had identified the defendant as their assailant on the evening of the crime. Deputy Meggs also acknowledged that Bosley had initially provided him with an incorrect name and address.

Deputy David Lee Bunn testified that Walker and his companions provided a physical description of the shooter. He confirmed that none of the three men identified their assailant by name.

Belton Luter, a captain in the Milan Fire Department, testified that on the night of the offense, Walker and Bosley joined him in his Ford Explorer with the intention of getting tattoos in Cedar Grove. Luter recalled that after missing a turn and entering the parking lot of Clarke's

Grocery to turn around, he saw a dark colored pickup truck with a skull-and-bones license plate being driven to the front of the store. He testified that a white man stepped out of the passenger side of the truck and that he saw a "white cloud of smoke" but heard no gunshots. Luter, who sped away at Bosley's urging and then saw the truck was in pursuit, stopped at the Pillow residence. Bosley went to the door to ask for help. At trial, Luter, who was struck in his shoulder by a small piece of metal during the shooting, could not identify the assailant. The bullets had done $4,000 in damage to his vehicle. Luter denied that there were drugs or guns in his vehicle and testified that the crock pot, which belonged to his mother, had been used for sausage balls at a fire department party.

Anita Marie Nutt, who lived approximately one-fourth of a mile from the defendant's residence, testified that later in the evening after the shooting, the defendant telephoned asking her to contact the victim. When she called the Luter residence, she discovered that the victim had been in an "accident." According to Ms. Nutt, when she telephoned the defendant, informing him of the "accident," he responded, "'Accident. He ain't been in no accident. He's dead, and I killed him.'"

Charles Eddy Young, who had a residence across the street from the Pillow house, was awakened by the defendant at approximately 4:00 a.m. on the morning after the shooting. He described the defendant as "a little excited, beside hi[m]self." According to Young, the defendant admitted that he had "been in conflict with some people and he shot and thought he had killed one."

Nancy Potts, a paramedic who transported the victim from the Pillow residence to the hospital, testified on behalf of the defense. She recalled that the victim smelled of alcohol and admitted having recently smoked marijuana.

James Prentiss Bullington, Jr., testified that he had purchased crack cocaine from Ms. Nutt on several occasions. He claimed that she eventually taught him how to "cook" crack so that he only needed to purchase the cocaine base. Bullington contended that several years earlier, he had observed the victim Walker sell Ms. Nutt a paper bag containing crack cocaine. There was also testimony that Walker had previously sold marijuana.

Glenda Kaye Bolton, the defendant's aunt, testified that at approximately 5:00 p.m., only hours before the shooting, she received a telephone call from a male, who identified himself as Walker, asking to speak with "Johnny," the defendant's father. Ms. Bolton recalled that when she informed the caller that Johnny was not there, he asked that she give Ms. Nutt a message to telephone him. She claimed that Walker called again at approximately 10:00 p.m. asking for Ms. Nutt. Ms. Bolton also contended that prior to the trial she had heard Eddy Young, who testified that the defendant admitted his guilt, say that he "didn't know anything" about the shooting.

Rhett Rocky Cook testified as an alibi witness for the defendant. He claimed that he and his sister, Denise Lay, watched movies together with the defendant and his wife, Crystal, from 6:00 or 7:00 p.m. on the night of the shooting until 1:00 a.m. the next morning. Denise Lay corroborated her brother's testimony, acknowledging that she had not told police of her claims.

The forty-year-old defendant testified that he was not involved in the shooting. While recalling his conversation with Young, he claimed that he had only been joking when he said that there had been a "shooting or conflict" and speculated that "they'll probably think me or you, one, did it." The defendant contended that he had no ill will toward Walker and insisted that Ms. Nutt had lied during her testimony. He also denied having confessed his crimes to Young, who, he alleged, was confused and "always on medication." The defendant denied ever having sold marijuana and maintained that Walker had "made up" his testimony.

I

The defendant first asserts that the evidence was insufficient to support his three convictions. The state disagrees.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Second degree murder is defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). Our Code defines criminal attempt as follows:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person

believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

The defendant argues that there was no direct evidence of his guilt and that the testimony of the state's witnesses was not credible. In fact, the evidence was largely direct. The victim Walker testified that the defendant stepped from the passenger side of a pickup truck in the parking lot of Clarke's Grocery and fired at the passenger side of the Luter vehicle. That qualifies as direct evidence of guilt. See Neil P. Cohen, et al., Tennessee Law of Evidence § 4.01[5] (4th ed. 2000) ("[A]n eyewitness who saw the defendant stab the victim provides direct evidence . . . ."). Additionally, both Eddy Young and Anita Nutt testified that the defendant confessed to shooting the victim. This was likewise direct evidence of guilt. See Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 40 (1964) (observing that confession to fellow inmate was direct evidence of guilt).

In our view, the defendant's primary challenge is to the adequacy of the identification. Identity, of course, is an indispensable element of any crime. See generally White v. State, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975). Our law provides that identification of the perpetrator of a crime may be accomplished by either direct or circumstantial evidence, or both. State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975). The determination of identity is a question of fact for the jury after consideration of all competent evidence. See Biggers v. State, 219 Tenn. 553, 411 S.W.2d 696, 697 (1967); Marable v. State, 203 Tenn. 440, 313 S.W.2d 451 (1958); State v. Crawford, 635 S.W.2d 704 (Tenn. Crim. App. 1982).

Here, the identity of the defendant was established by at least three witnesses. The jury acted within its prerogative by accrediting the witnesses for the state and rejecting the defense claim of alibi. This court may not resolve questions of witness credibility on appeal. That function is solely within the province of the trier of fact. See, e.g., State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995).

II

Next, the defendant argues that the trial court erred by failing to charge the jury on the lesser included offenses of attempted reckless homicide and attempted criminally negligent homicide and by failing to provide a special instruction on reasonable doubt. The state argues otherwise.

The question of whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. Id.; see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30.

In Burns, our supreme court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:

An offense is a lesser included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
(1) a different mental state indicating a lesser kind of culpability; and/or
(2) a less serious harm or risk of harm to the same person, property or public interest, or
(c) it consists of
(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b).

6 S.W.3d at 466-67.

The trial court has a duty to instruct the jury as to a lesser included offense if: (1) reasonable minds could accept the offense as lesser included; and (2) the evidence is legally sufficient to support a conviction for the lesser included offense. Burns, 6 S.W.3d at 469; see also State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999). Moreover, our supreme court has held that trial courts "must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the [s]tate or of the defense. The evidence, not the parties, controls whether an instruction is required." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002). Our high court observed that the "jury is not required to believe any evidence offered by the [s]tate," and held that the authority of the jury to convict on a lesser-included offense may not be taken away, even when proof supporting the element distinguishing the greater offense from the lesser offense is uncontroverted. Id. at 189.

Here, the trial court charged the jury on the indicted offense of attempted first degree murder, attempted second degree murder, and attempted voluntary manslaughter. Neither of the lesser included offenses advanced by the defendant on appeal, attempted reckless homicide and attempted criminally negligent homicide, is a recognized crime in Tennessee. See State v. Vernon Lamar Bryant, No. E2002-01234-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Oct. 21, 2003); State v. Dale Nolan, No. 01C01-9511-CC-00387 (Tenn. Crim. App., at Nashville, June 26, 1997).

Although the defendant makes no argument with regard to the trial court's failure to instruct the jury on reckless endangerment as a lesser included offense, the state concedes that the omission

was error. See State v. Horace Demon Pulliam, No. M2000-00417-CCA-R3-CD (Tenn. Crim. App., at Nashville, Jan. 23, 2002) (holding that reckless endangerment is a lesser included offense of attempted first degree murder). It is our view, however, that the error for the failure to instruct reckless endangerment under the circumstances of this case qualifies as harmless beyond a reasonable doubt. See State v. Richmond, 90 S.W.3d 648 (Tenn. 2002). By finding the defendant guilty of attempted second degree murder, the jury implicitly rejected the lesser included offense of attempted voluntary manslaughter. Moreover, the main issue in this case was one of identity, not mens rea. There is little indication that the defendant had merely acted in a reckless manner. He either fired the shots purposely in the direction of the victims or, by his own defense, was not there at all. The defendant is not entitled to relief on this issue. See Allen, 69 S.W.3d at 191.

Finally, the defendant also asserts that the trial court erred by failing to give a special instruction on reasonable doubt. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). While the defendant may request special instructions, jury instructions are sufficient where they adequately state the law. See, e.g., State v. Tyson, 603 S.W.2d 748 (Tenn. Crim. App. 1980). When a trial court's charge to the jury is complete, it need not give additional special instructions requested by the defendant. See State v. Story, 608 S.W.2d 599, 603 (Tenn. Crim. App. 1980).

The defendant asserts only that the failure to provide the requested instruction was error. He provides no argument as to either why the instruction was warranted or how its omission affected the trial. The record reflects that the trial court adequately instructed the jury on reasonable doubt. Accordingly, this issue is without merit.

III

Next, the defendant contends that because Melvin Bosley did not testify at trial, his conviction for the attempted second degree murder of Bosley is in violation of his constitutional right to confrontation. He also argues that the trial court erred by excluding Bosley's statement to police. The state asserts that there was no constitutional or evidentiary error.

The Sixth Amendment guarantees an accused the right to be "confronted with the witnesses against him." U.S. Const. amend VI. In State v. Nguyon Bao, No. 02C01-9801-CR-00004 (Tenn. Crim. App., at Jackson, Aug. 25, 1999), the defendant was convicted of two counts of attempted first degree murder and one count of attempted second degree murder. On appeal, he contended that his right of confrontation had been violated because one of the victims had not testified at trial. In affirming the judgments, this court stated as follows:

[T]he claim is without merit. Certainly, the defendant would have been entitled to confront [the victim] had he been utilized by the state as a witness. The Sixth

-7-

Amendment to the United States Constitution does not, however, apply in these circumstances. The fact that the state did not call [the victim] as a witness does not violate the right to confrontation. State ex rel. Byrd v. Bomar, 214 Tenn. 476, 381 S.W.2d 280, 281-82 (1964).

Id., slip op. at 5-6. In our view, this case cannot be distinguished from Bao. It is our conclusion, therefore, that there was no violation of the defendant's confrontation rights by Bosley's failure to testify.

In a related issue, the defendant also contends that the trial court's exclusion of Bosley's statement to police violated his Sixth Amendment right to confront witnesses and his Fourteenth Amendment due process rights. The state asserts that the statement was properly excluded as hearsay.

The statement, given at 11:13 p.m. on the day of the offense, provides as follows:

At 10:20 me . . . and friend[s] Belton Luther, Dee Andre Walker where [sic] headed north bound on 104 when driver Belton Luther missed his turn [and] ended up in front of a store[.] Friend Dee Andre said let me get a Coke Cola at the machine[.] Next thing I knew was a full size Chevy ext[ended] cab pull up on the passenger side and one shot was fired[.] I told my friend Belton to go so we headed south bound and stop[ped] at the first house with light[.]

The defendant argues that the statement would have been relevant to contradict some of the testimony by the victim Walker.

The Rules of Evidence provide that "[h]earsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). In our view, Bosley's statement would qualify as hearsay. It was made out of court and, because the defendant intended to use it as substantive evidence in contradiction of the victim's testimony, it would have been offered to prove the truth of the matter asserted. It does not fall under any of the recognized exceptions. See Tenn. R. Evid. 803. In consequence, the trial court correctly identified the statement as inadmissible hearsay.

Under the Due Process Clause of the Fourteenth Amendment, criminal defendants must be afforded a meaningful opportunity to present a complete defense. California v. Trombetta, 467 U.S. 479, 485 (1984). In State v. Brown, which concerned the application of Tennessee's rape shield law, our supreme court stated as follows:

The constitutional right to present a defense has been held to "trump" the rule against hearsay in at least two United States Supreme Court decisions. . . .

The facts of each case must be considered carefully to determine whether the constitutional right to present a defense has been violated by the exclusion of evidence. Generally, the analysis should consider whether: (1) the excluded evidence is critical to the defense; (2) the evidence bears sufficient indicia of reliability; and (3) the interest supporting exclusion of the evidence is substantially important. . . .

29 S.W.3d 427, 433 (Tenn. 2000) (citations and footnotes omitted).

In our view, the exclusion of Bosley's statement did not work to deprive the defendant of his right to present a defense. The statement was not critical to the defense. As already noted, the defense was one of mistaken identity. Moreover, the information contained in the statement was included in the direct testimony of Belton Luter. Because of Luter's testimony, the content of the statement would have been cumulative of other evidence. The trial did not abuse its discretion by excluding the written statement of Melvin Bosley.

IV

The defendant also asserts in his statement of the issues that the trial court erred by denying his pretrial motions, motions in limine, and motions during trial. He does not identify any particular motions or provide any argument, authority, or citations to the record in support of his sweeping assertion. Essentially, the defendant invites this court to scrutinize the record and consider any motion-related issues worthy of raising. In the absence of any specific argument, however, this court must treat issues as waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by the court."); Jackie William Crowe v. State, No. E1998-00016-CCA-R3-PC, slip op. at 6 (Tenn. Crim. App., at Knoxville, June 20, 2000). Thus, the waiver doctrine precludes any consideration of "hidden" issues.

V

As his final claim, the defendant contends that the sentence is excessive. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating

or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence should then be reduced within the range by any weight assigned to the mitigating factors present. Id.

At the sentencing hearing, the victim testified that he was employed as a carpenter prior to the shooting but is no longer able to do that type of work due to his injuries. He stated that he will never be able to bend his right wrist again. His medical bills totaled $165,909.43.

Carroll County Sheriff's Deputy Webster Leroy Bates testified that when he arrested the white defendant, he observed a cross burning in his back yard. A photograph was included in the record. Each of the victims was black.

The trial court applied three enhancement factors: (2) that the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range; (4) that the offense involved more than one victim; and (11) that the defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(2), (4), (11). The trial court, which considered the defendant's claim of mitigating factors, that he had complied with the terms of his bond and was a Carroll County native with strong family ties, see Tenn. Code Ann. 40-35-113(13), assigned them little weight.

Initially, the defendant has failed to address any particular error in the application of enhancement or mitigating factors, arguing only that the sentences were too high. Generally, the weight given each enhancement and mitigating factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000). Nevertheless, the state concedes that under our traditional law, the trial court erred by applying enhancement factors (4) and (11). Because there was a separate conviction for each victim, enhancement factor (4), that the offense involved more than one victim, should not have been applied. See State v. Freeman, 943 S.W.2d 25, 31 (Tenn. Crim. App. 1996). Additionally, because enhancement factor (11), that the defendant had no hesitation about committing a crime when the risk to human life was high, was inherent in the offense, that factor should not have been applied. See State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994); State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995); see also State v. Jerry B. Crow, No. 01C01-9310-CR-00348 (Tenn. Crim. App.,

at Nashville, Nov. 6, 1995). Thus, the only enhancement factor remaining is (2), that the defendant has a previous history of criminal convictions or behavior.

A Range I sentence for a Class B felony is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2). The state contends that enhancement factor (2), to which the trial court assigned considerable weight, is itself sufficient to support the eleven-year sentences. The presentence report reflects that the defendant has a lengthy record of criminal convictions, including aggravated assault, assault, driving under the influence, reckless driving, driving on revoked, resisting stop and frisk, disorderly conduct, and public intoxication. Nevertheless, many of the crimes are misdemeanors and had occurred more than fifteen years previous to the shooting. In our view, that would justify an enhancement of only one year above the minimum.

Finally, the state urges this court to apply enhancement factor (10), that the defendant employed a firearm during the commission of the crime, on appeal. See Tenn. Code Ann. § 40-35-114(10). The United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), however, calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. Id. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at **13-14 (emphasis in original). Finally, the Court concluded that "every defendant has a right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id. at *31 (emphasis in original). This court declines, therefore, to apply enhancement factor (10).

In summary, enhancement factor (2) is applicable to each of the defendant's convictions for attempted second degree murder and warrants a sentencing increase of one year above the minimum. There are no other enhancement factors. The sentences are, therefore, modified to nine years each, to be served concurrently as specified by the trial court.

Each sentence is modified to nine years. Otherwise, the judgments of the trial court are affirmed.

 

_____
GARY R. WADE, PRESIDING JUDGE