IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 13, 2005

## STATE OF TENNESSEE v. JEROME BOND

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-06593     Arthur T. Bennett, Judge**

---

**No. W2004-02557-CCA-R3-CD  - Filed December 8, 2005**

---

The defendant, Jerome Bond, was convicted of felony murder and especially aggravated robbery. See Tenn. Code Ann. §§ 39-13-202, -403. The trial court imposed a life sentence for the felony murder and a sentence of twenty-five years for the especially aggravated robbery and ordered the sentences to be served consecutively. In this appeal, the defendant asserts that the trial court erred by (1) admitting into evidence a photograph of him taken by police; (2) denying his motion to modify Tennessee Pattern Jury Instruction 43.04; (3) denying his request to instruct the jury on the lesser included offenses of especially aggravated robbery; and (4) ordering his sentences to be served consecutively. The judgments of the trial court are affirmed.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Jerome Bond.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; and Lee Coffee and Stacy McEndree, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

At approximately 8:30 a.m. on March 19, 2003, the victim, Dennis Bell, left his residence with the intention of driving to his grandmother's house to visit friends. Later, Patrol Officers Jeremy Wells and Sean Sanders of the Memphis Police Department responded to an "armed-party call" at the LaPaloma Apartments. The caller reported that there were three armed men at the scene. When they arrived, the officers saw the defendant and Jerry Mason flee from the parking lot. The officers ultimately found the two men hiding underneath a vehicle and took them into custody. At that point, the officers turned their attention to a parked car occupied by the victim and John Davis Streeter. Streeter, who was on the ground near the passenger side of the vehicle, had been shot in

the shoulder. The victim, who was found slumped in the open window on the driver's side of the car, had suffered a fatal gunshot wound to the left side of his face. After calling for assistance, Officer Wells found a .22 caliber long rifle where he had first seen the defendant. Officer Sanders found a .380 caliber pistol and a bag of cocaine where the men were hiding just before their arrest. Other officers found a bag of cocaine in the victim's car and a .380 caliber shell casing at the scene. At trial, Streeter testified that the victim, who had been a friend since childhood, picked him up at approximately 10 p.m. on the night of the shooting and then drove into the LaPaloma parking lot. He recalled that the defendant approached their vehicle and informed the victim that someone was looking for him. Streeter testified that he then heard two gunshots. Shortly thereafter, he saw a police car, which was traveling towards their vehicle, make a u-turn. He stated that the victim, who had blood "shooting out" of his head, drove in the direction of the police car before the vehicle was brought to a halt. Streeter insisted that he was not intoxicated at the time of the offense and that he had never known the victim to deal in drugs.

Annette Bell, the wife of the victim, testified that the victim had been convicted of possession of marijuana in 1994 and 1996. She also claimed that the victim had never sold illegal drugs and had never been charged with that offense.

Jerry Mason, who had been charged with aggravated robbery and facilitation of a felony as a result of this incident, testified for the state. He claimed that he purchased marijuana from the defendant on a regular basis and on the night of the offense agreed to "watch [his] back" while he made an illegal drug purchase. According to Mason, a third individual, who he knew only as "Peewee," drove the two men to the LaPaloma Apartments. He testified that the defendant, who possessed a small, black automatic pistol, provided him with a rifle. Mason stated that he hid behind a building as the defendant approached the vehicle driven by the victim. He contended that after about twenty seconds, he heard a gunshot and, thinking that the defendant had been shot, responded by firing a shot at the victim's vehicle. Mason testified that it was only when he saw the defendant running in his direction that he realized the defendant had shot the victim. He claimed that he dropped his rifle and fled but was quickly apprehended by the police.

Detective Marcus Berryman of the Memphis Police Department Crime Response Unit, questioned the defendant. At trial, he presented a written statement from the defendant wherein the defendant acknowledged his plan to rob the victim. In the statement, the defendant admitted shooting both the victim and Streeter but insisted that it was accidental. According to the statement, Mason had provided the defendant with a loaded pistol and the third individual involved in the incident went by the name "ToJo". The defendant confirmed that he had taken seventy-five dollars from the victim, all of which was recovered by the police.

Detective Berryman produced a photograph of the defendant holding the bills he had taken from the victim, some of which appear to be smeared with blood. The detective explained that because there was no camera in the interview room, an officer found a camera and the defendant was asked to hold the cash and pose for a photograph.

Steve Scott, a forensic scientist with the Tennessee Bureau of Investigation, examined the .380 caliber pistol and the .22 caliber rifle that were found at the scene. He stated that the pistol, which was in operating condition, included a safety feature and determined that a "trigger-pull test" did not indicate any likelihood of a misfire. Agent Scott confirmed that the .380 caliber shell casing found at the scene was fired from the pistol.

I.

Initially, the defendant challenges the admissibility of the photograph showing him holding money taken from the victim. He argues that the photograph was staged and that any probative value was substantially outweighed by the danger of unfair prejudice against the defendant.

The admissibility of photographs is governed by Tennessee Rule of Evidence 403. See State v. Banks, 564 S.W.2d 947 (Tenn. 1978). The evidence must be relevant and its probative value must outweigh any unfair prejudicial effect. Tenn. R. Evid. 403; Banks, 564 S.W.2d at 950-51. Whether to admit the photographs rests within the sound discretion of the trial court and will not be reversed absent a clear showing of an abuse of that discretion. State v. Dickerson, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993); State v. Allen, 692 S.W.2d 651, 654 (Tenn. Crim. App. 1985).

The photograph was taken by police after the defendant was taken into custody. When he was interviewed by police, the defendant admitted that the money in his possession was that taken from the victim. There were three twenty dollar bills and one ten dollar bill. Some of the bills had been stained with the blood of the victim. The photograph was staged only in the sense that the officers re-enacted for the camera what Detective Berryman had already seen firsthand.

The evidence was cumulative in that it confirmed his testimony. The trial court found that the photograph was not inflammatory and ruled that the probative value of the photograph outweighed any unfair prejudice to the defendant. Because the probative value of the photograph was merely cumulative to police testimony and any prejudicial effect was minimal, it is our view that any error would have qualified as harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

II.

The defendant next contends that the trial court erred by its refusal to modify Tennessee Pattern Jury Instruction 43.04. He asked that the first sentence be deleted because it conflicted with other pattern instructions. The pattern instruction at issue provides as follows:

> You can have no prejudice or sympathy, or allow anything but the law and the evidence to have any influence upon your verdict. You must render your verdict with absolute fairness and impartiality as you think justice and truth dictate.

Tennessee Pattern Jury Instructions, Criminal 43.04.

The defendant suggests that the jury should not have been instructed to be unsympathetic and that other pattern instructions are contrary to Instruction 43.04. Specifically, the defendant points to the following instructions, in pertinent part:

> 1.02: The law applicable to this case is stated in these instructions, and it is your duty to carefully consider all of them.
>
> 1.06: Neither by . . . these instructions nor any remarks which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be.
>
> 1.08: You are the exclusive judges of the facts in this case. Also, you are the exclusive judges of the law under the direction of the court. You should apply the law to the facts in deciding the case.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to a trial by jury. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 174 Tenn. 642, 130 S.W.2d 99 (1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 793 S.W.2d 236, 249 (Tenn. 1990); see also Tenn. R. Crim. P. 30. Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510, 519 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

Although the defendant may request special instructions, jury instructions are sufficient where they adequately state the law. See, e.g., State v. Tyson, 603 S.W.2d 748 (Tenn. Crim. App. 1980). When a trial court's charge to the jury is complete, it need not give additional special instructions requested by the defendant. See State v. Story, 608 S.W.2d 599, 603 (Tenn. Crim. App. 1980).

In our assessment, the trial court gave an accurate and complete charge of the law applicable to the facts of this case. The pattern instruction at issue comports with the law. The other instructions were not so contradictory as to have confused the jury or otherwise to have mitigated their function as fact-finder. In our view, the trial court did not err by refusing the defendant's request to modify the instruction.

III.

The defendant also asserts that the trial court erred by denying his request to instruct the jury on attempted especially aggravated robbery, attempted aggravated robbery, and attempted robbery as lesser included offenses of especially aggravated robbery. The state submits that the trial court properly denied the request.

The question of whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. Id.; see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). When the evidence in the record fairly raises or supports the existence of a defense, the trial court is compelled to instruct the jury on the issue. Manning v. State, 500 S.W.2d 913, 915-16 (Tenn. 1973); see also Almonrode v. State, 567 S.W.2d 184, 187 (Tenn. 1978).

In Burns, our supreme court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:

> An offense is a lesser included offense if:
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest, or
> (c) it consists of
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b); or
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b).

6 S.W.3d at 466-67.

The state acknowledges that attempted especially aggravated robbery, attempted aggravated robbery, and attempted robbery may be lesser included offenses of especially aggravated robbery under a Burns analysis. The state contends, however, that the "mere existence of a lesser offense to a charged offense is not sufficient alone to warrant a charge on that offense [and that] [w]hether or not a particular lesser-included offense should be charged to the jury depends on whether proof in the record would support the lesser charge." Id. at 468. In Burns, our supreme court developed the following two-part standard to determine whether a lesser included offense jury instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the

existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469. Our court further explained in State v. Ely, 48 S.W.3d 710, 719 (Tenn. 2001), that "[p]art (c) of the [Burns] test was meant to apply to situations in which a defendant attempts to commit, or solicits another to commit, either the crime charged or a lesser-included offense, but no proof exists of the completion of the crime."

Here, the state presented overwhelming evidence that the offense of especially aggravated robbery had been completed. Detective Berryman testified that the defendant admitted to having had taken money from the victim. During his police interview, the defendant produced the blood-stained bills. Other officers corroborated that fact. No evidence was presented to show that the defendant had merely attempted to commit a robbery. The trial court ruled during a jury-out hearing that a jury instruction on attempted especially aggravated robbery was not warranted because that offense was not fairly raised by the proof. Although it may be the better practice for trial courts to instruct on all possible lesser included offenses, it is our view that the trial court did not err in this particular instance by refusing to instruct on attempt. See State v. Marcum, 109 S.W.3d 300, 304 (Tenn. 2003) (holding that an instruction on attempt was not warranted because no evidence of attempt was presented at trial). Even if there was a modicum of evidence suggesting that an attempt had taken place, it is our further view that in the context of the entire record, the error was harmless beyond a reasonable doubt. See State v. Richmond, 90 S.W.3d 648, 662-63 (Tenn. 2002).

IV.

As his final issue, the defendant contends that the trial court erred by ordering his sentences to be served consecutively. The state submits that consecutive sentencing is proper because the defendant qualifies as a dangerous offender. See Tenn. Code Ann. § 40-35-114(b)(4).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401 (2003), Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel

relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), our high court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (2003).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

The trial court ordered consecutive sentences on the following grounds:

[T]his defendant . . . is a dangerous offender. He set this up . . . , they met with the other person that was with him and asked him about going with him to this location, and he planned this himself. He was the leader . . . and when he got there, apparently the other man might not have known what he was going to do in terms of all the circumstances, but he accosted the victim in this case at the truck and started blasting him.

The victim had a friend with him on the other side in the truck . . . who was struck, and it [further] appears to me that this defendant is a dangerous offender based on . . . his history of arson. Arson is a dastardly offense that could not only kill persons where the fire is started but the whole community could be wiped out by an arsonist. . . . So the [c]ourt finds that he is a danger to the community and that his actions indicate that he would be dangerous if he is out again.

. . . .

And the [c]ourt feels based on this defendant's actions[,] the dangerous nature of his activity that killed one man and almost killed another, the other man carry[ing] a bullet that's so close they can't take it out, [the] fact that he has a history of violence . . . [and] arson[,] the [c]ourt . . . will run [the sentences] consecutive . . . .

In Gray, our supreme court ruled that "[t]he decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances." Gray, 538 S.W.2d at 393. In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed that principle, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." 905 S.W.2d at 938.

In determining that the defendant qualified for consecutive sentencing, the trial court found that an extended sentence reasonably related to the severity of the offenses and was necessary to protect the public against further criminal conduct by the defendant. Furthermore, the record

establishes that consecutive sentencing is appropriate. As the trial court observed, the defendant planned the robbery, recruited accomplices, and was the leader in the commission of the robbery. In a populated area, the defendant shot and killed the victim from close range and also shot the passenger in the vehicle. See Timothy Allen Moore, No. M2000-02933-CCA-R3-CD (Tenn. Crim. App., at Nashville, Jan. 11, 2002) ("[Armed robbery] is a very serious crime, against which little protection is possible, and those who commit armed robberies upon innocent [victims] are, almost by definition, 'dangerous offenders.'"). In our view, the defendant's behavior demonstrated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. The effective sentence reasonably relates to the seriousness of the offenses and is necessary to protect the public from the defendant.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE