NORMAN STRUNK AND CHARLES DICK EAGLETON, Plaintiffs in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

348 S. W. 2d 339.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

Rehearing Denied February 6, 1958.

Designated for publication July 26, 1961.

(1)

JEFFERS & JEFFERS, Oneida, for plaintiffs in error.

THOMAS E. FOX, Assistant Attorney General, for defendant in error.

MR. JUSTICE SWEPSTON, delivered the opinion of the Court.

The two above-named plaintiffs in error, hereinafter called defendants, were convicted for the offense of armed robbery and sentenced to serve a minimum of ten years in the State Penitentiary, from which they have appealed and have assigned a number of errors.

**4**

■ The first two errors are that there is no evidence to support the verdict and that the evidence preponderates against the verdict of the jury and in favor of the innocence of the defendants.

It will be unnecessary to make an extended statement of facts for the reason that in the final analysis it was simply a question of credibility of the respective witnesses and the verdict of the jury settles that question so far as this Court is concerned.

These two defendants left Cincinnati, Ohio, shortly after midnight on Sunday morning, September 2, 1956, and drove down to Scott County, Tennessee, to the place of business of the prosecuting witness, Manse Stevens, who was operating a beer tavern known as Luther Chitwood's Place, where they arrived at about 7:00 A.M. Stevens and his wife occupied the living quarters in the rear of the beer room. The defendants are half brothers and there was some marital connection between Stevens' wife and one of the defendants and Stevens and the defendants were well acquainted with one another, although it had been some time since these two men who worked in Cincinnati had seen Stevens.

Stevens testified that he and his wife were still in bed when the defendants awakened him and he went to the door and let them in, whereupon Eagleton, suddenly and without warning, drew a gun on him while Strunk took his billfold from his pocket which had between five and seven hundred dollars in money in it. That as the defendants left his place, he fired two shots and learned afterward that one of them struck Eagleton in the arm. Stevens' wife generally corroborated his story, although she did not actually see the robbery as she was trying to

get on sufficient clothes to make her appearance outside the bedroom.

On the other hand, the defendants testify that they went to Stevens' place to obtain a case of beer and that they were unarmed and they deny that they entered the place of business but say that Eagleton was reaching out to catch hold of the handle of a screen door at the front of the beer tavern when Stevens shot him and that Strunk was back at the automobile and that neither of them at any time went inside the premises.

Strunk took Eagleton to a hospital nearby, where he paid $50 in advance for admission of Eagleton to the hospital and later on in the day Strunk returned to the hospital and took Eagleton from the hospital without seeing anyone at the hospital about his leaving and then the two of them picked up the two women that they had brought down from Cincinnati with them and all four went back that same day to Cincinnati. One of these women was a Mrs. Goodman, whose father lived in the vicinity, and it seems that the object of her coming down from Cincinnati was to see her father, although it eventuated that she did not see him at any time while they were there in Scott County.

Both Stevens and the two defendants had decided criminal records but the jury chose to believe Stevens and his wife instead of the two defendants, which is conclusive on this Court. Those two assignments are accordingly overruled.

■ It is next insisted that the court erred in permitting Stevens to testify over the objection of defendants, because some years ago he had been convicted of robbery and rendered infamous which judgment had never been

6

set aside. Counsel for defendants relies upon the language in Section 2 of said Ch. 194, of the Public Acts of 1953, which is as follows:

"That this Act take effect from and after its passage, but is not to be retroactive so as to affect any matter in litigation at the time of passage, * *."

Obviously, there is no merit in this contention because this litigation was not in existence at the time of the passage of the Act. We must, therefore, overrule the exception.

It is next insisted that the court erred in not charging any lesser offense embraced within the language of T.C.A. sec. 39-3901, as amended by Ch. 72, Section 1, of the Acts of 1955. That section defines robbery and provides for a penalty of five to fifteen years, but there is a proviso that, if the robbery be accomplished by the use of a deadly weapon, the punishment shall be death by electrocution or the jury may commute the punishment to imprisonment for life or for any period of time not less than ten years.

It is obvious from the foregoing statement of facts, however, that the defendants were guilty either of armed robbery with a minimum penalty of ten years or they were guilty of no offense whatever. Under the rule announced in *Powers v. State,* 117 Tenn. 363, 372, 97 S.W. 815, and subsequent opinions of this Court, it was not error for the court to fail to charge on the lesser offense. The defendants suffered no prejudice by this failure of the court to so charge the lesser offense and there was in fact no evidence to support any charge of simple robbery.

This becomes relevant again by reason of the next three assignments which arise out of the error of the jury

with reference to their verdict and the action of the court thereon. The jury found the defendants guilty and fixed their punishment at five years in the penitentiary. The judged called the jury's attention to the fact that the statute provided for a minimum sentence of ten years for armed robbery and directed them to return and consider their verdict upon that basis. The jury then reported that they found the defendants guilty and fixed their punishment at ten years.

Defendants rely upon *Dougherty et al. v. Shown et al.,* 48 Tenn. 302, for this as being erroneous. However, the later cases are contrary to the insistence of the defendants. In *Alexander v. State,* 189 Tenn. 340, 225 S.W.2d 254, in accordance with the motion by the defendants, the jury undertook to fix both the fine and imprisonment as allowed under Ch. 82, Public Acts of 1947, but the jury not only did this but went further and attempted to suspend the sentence. One page 343 of 189 Tenn., at page 255 of 225 S.W.2d, opinion by Chief Justice Neil, it is said:

"It was not a legal verdict in that the jury undertook to do that which it had no right to do, viz. to suspend the sentence. The trial judge should have called their attention to the fact that they could not suspend a sentence and to retire and consider further of their verdict. The verdict being illegal the trial court could pronounce no judgment upon it. * * *"

Then in *Riley v. State,* 189 Tenn. 697, 227 S.W.2d 32, the defendant requested that the jury fix the fine and punishment but they came in with a verdict for $100 fine and no jail sentence because they did not think they had the right to fix the latter. The trial court thereupon instructed

the jury to retire and consider further of the case and determine whether or not they would impose any imprisonment upon the defendant. The jury reported back a verdict of $200 but no imprisonment. That action of the trial court was approved by this Court in an opinion by Chief Justice Neil for the reason that although the verdict was not defective, it was based upon an erroneous view of the law, and the Court said at page 702 of 189 Tenn., at page 34 of 227 S.W.2d:

> "Under the weight of authority the trial court was fully justified in declining to accept the first verdict, and the second was not invalid since it was responsive to the issues, and the trial court had in no way improperly influenced their final decision."

In the instant case, the jury having found the defendants guilty could not fix the punishment at less than ten years. Hence, there was no error in the action of the trial court, and these assignments are overruled.

The next error complained of is the **failure of** the court to charge the jury that they could find one of the defendants guilty and acquit the other if the evidence so showed. There was no special request for any such instruction. See *Crawford v. State,* 197 Tenn. 411, 421, 273 S.W.2d 689. There was no evidence to support any such suggested instruction because as stated above, they were either both guilty of armed robbery or neither was guilty of anything. The assignment is overruled.

The next complaint we deem proper to mention is the insistence that the State failed to prove that the alleged pistol involved was a deadly weapon. Since the indictment charges that the robbery was done by the use of a deadly weapon, that is, a pistol, and the proof shows

that the witnesses were talking about a gun, that is, a pistol, it was unnecessary for the State to go farther in either the allegations or the proof. *Turner v. State,* 201 Tenn. 562, 300 S.W.2d 920.

 Complaint is made that the court committed error in giving the jury possession of his written charge wherein certain portions thereof were marked through but still legible, indicating that those stricken portions were not proper for the consideration of the jury; also, because the court refused to grant the motion of the defendants to permit the original charge instead of the photostatic copy thereof, to be certified as a part of the transcript in the bill of exceptions.

We find no merit in either complaint; the matters stricken through by the judge were not proper for the consideration of the jury and the photostatic copy of the original written charge is quite legible and is an exact copy of the original.

 The last complaint is that the court failed to grant a new trial on the strength of the affidavit of nine jurors to the effect that they did not find the defendants guilty of armed robbery but only found them guilty without specifying what they were guilty of and fixed the punishment at five years.

 There is no merit in this insistence for two reasons, (1) because, as stated above, the jury was not warranted in bringing in any other verdict than either not guilty or guilty of armed robbery and fixing the penalty at a minimum of ten years, (2) because jurors will not be allowed to impeach their verdict in this manner. *Lee v. State,* 121 Tenn. 521, 116 S.W. 881; *George v. Belk,* 101 Tenn. 625,

10

49 S.W. 748; *Lindsey v. State,* 189 Tenn. 355, 225 S.W.2d 533, 15 A.L.R.2d 527.

All assignments are, therefore, overruled and the judgment of the lower court is affirmed with costs.

## On Petition to Rehear

The petition to rehear in this case could very well be overruled without further comment for the reason that it points out no matters overlooked by this Court in the original opinion nor does it cite any authorities which were not presented and considered heretofore. We shall, however, make the following comments.

The first ground of the petition to rehear is a repetition of the insistence that Ch. 194, Public Acts of 1953, amending the infamy statute T.C.A. sec. 40-2712, was intended to be and is prospective only in its operation. This insistence is based upon two points, first, Section 2 of said Act which provides ''that this Act [shall] take effect from and after its passage, but is not to be retroactive so as to affect any matter *in litigation at the time of passage,* * * *.'' (Emphasis ours.) Second, that the disqualification from testifying because of conviction of an infamous crime still applied to those who were convicted before the passage of this amendatory act, was not removed by same, and could only be removed by proper petition and order under T.C.A. sec. 40-3701 et seq.

In other words, counsel's theory is that we now have two kinds of infamy, those absolutely disqualified from testifying because they were convicted before the 1953 amendment on the one hand, and those who have been convicted since the amendment who are nevertheless qualified to testify but the infamy going only to its effect

upon the credibility of the witness. This seems to us to be a highly implausible theory and one that perhaps would raise serious constitutional objections, because there is no reasonable basis for such a distinction and classification.

Passing over the constitutional question, however, we think counsel overlooks or fails to appreciate the history leading up to this amendment which is ably discussed in 22 Tenn. Law Review, 544. That article along with its appendix clearly demonstrates the necessity for reform, as so vividly exemplified by the case of *Tom Love Grocery Co. v. Maryland Casualty Co.*, 166 Tenn. 275, 61 S.W.2d 672, and the desirability of bringing Tennessee in line with practically all of the other states of the Union and the United States, the Dominion of Canada and England.

We think also that counsel misconstrues the effect of Section 2 of said amendatory act. We have no doubt that its purpose was really to allay any suspicion in the minds of any of the legislators at the time the bill was proposed that it was being offered by someone with a special interest in a particular pending case such as the type of case as the Tom Love Grocery Co. case, supra, where the burglary loss could be proved only by the burglar himself but who was disqualified because of infamy. In fact, the present Code has not included Section 2 in the codification, which indicates that the codifiers considered it of no more force and effect than we have indicated above.

The only other matter we desire to make any reply to in the petition to rehear is the statement on page 4 of said petition that the jury may believe any part, none or all of the testimony of the witness. With that statement there can be no disagreement. However, it is further

argued that this justified the jury, if the court had charged them on the lesser offense of simple robbery, in believing that the robbery was committed without the use of a deadly weapon. With this latter statement we certainly do not agree, for the reason stated in the original opinion, namely, that under the evidence the plaintiffs in error were guilty either of robbery with a deadly weapon or they were guilty of no offense at all. There is not one iota of evidence that the robbery was committed other than by the use of a deadly weapon. If we should now reverse this case and remand it for a new trial, the plaintiffs in error would stand acquitted of the armed robbery, of which the jury has found them to be guilty, and if on a new trial, at which the evidence must of necessity be the same, they should be convicted of simple robbery, the conviction would be without any evidence to support it and on appeal, the argument should and most certainly would be made that there was no evidence to sustain the conviction of simple robbery.

If counsel will turn to *Owen v. State,* 188 Tenn. 459, at page 470, 221 S.W.2d 515, there will be found a number of cases in which this principle is clearly stated and developed.

The petition to rehear is overruled.