STATE of Tennessee, Appellee,

v.

Thomas Eugene TYSON, Appellant.

Nos. 79–62–III, 16134 and 16135.

Court of Criminal Appeals of Tennessee, at Nashville.

April 25, 1980.

Permission to Appeal Denied by Supreme Court July 28, 1980.

Robert W. Wedemeyer, John L. Mitchell, Cunningham, Mitchell, Hicks & Wedemeyer, Clarksville, for appellant.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Nashville, John J. Hestle, Dist. Atty. Gen., Wade Bobo, Asst. Dist. Atty. Gen., Clarksville, for appellee.

## OPINION

SCOTT, Judge.

Convicted of armed robbery and kidnapping, the appellant was subsequently found to be an habitual criminal. He received the mandatory life sentence. Much aggrieved by these actions, he has appealed contending that eleven errors occurred during his jury trial.

Since the sufficiency of the evidence is not attacked, no recitation of the facts is necessary. The convictions grew out of the armed kidnapping and subsequent robbery of a routeman for Vaughn's Vendors as he returned to his van while servicing the cigarette machine at Skyline Lanes in Clarksville. Although two men participated in the crime, the second man was never apprehended.

■ The first issue presented for review is that the court erred in failing to dismiss the indictments since the state failed to strictly comply with TCA, § 40–3901, et seq., the Interstate Compact on Detainers, the statutes under which jurisdiction to try the appellant was obtained.

The appellant was indicted for these offenses at the November 1977 term of the Montgomery County Grand Jury. He was in prison in Kentucky at the time. On June 20, 1978, the District Attorney General requested temporary custody, pursuant to the Compact. The request showed charges pending for kidnapping and armed robbery. On July 20, 1978, the District Attorney General wrote the appellant at the Kentucky State Reformatory and advised him of his speedy trial rights under the Compact. On August 22, 1978, the appellant executed an Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints. There was no listing of the indictments on the form executed by him.

Subsequently the appellant was returned to Tennessee, arriving on September 14, 1978. The following day the two attorneys who represented him at trial and on appeal were appointed. On September 29, 1978, the appellant waived formal arraignment and moved for a continuance. A motion for another continuance was filed on December 11, 1978 to allow counsel to fully prepare for trial. This motion was granted on December 15, 1978. Then on March 1, 1979, the appellant filed a motion for dismissal for lack of a speedy trial. This motion was overruled on March 5, 1979 and the trial began two days later.

The appellant contends that the form he signed was improperly completed; that the state failed to bring him to trial within the time limitations set forth in the Compact; that the continuances requested by counsel should not be counted in the time computation since the state caused them to seek the delays; that he should have been provided counsel in Kentucky to advise him of his rights under the Compact; and that the request for temporary custody improperly failed to mention the habitual criminal counts in the indictments.

■ The appellant signed the request form after he had received the District Attorney General's letter and after he consulted with the resident legal aide, whom he termed a "jail house lawyer" at the Kentucky State Reformatory Resident Legal Service. The form was properly executed, although the appellant testified he thought that his signature thereon was only to request the appointment of counsel. All blanks were not filled in, but this failure did not affect the legal efficacy of the request form. There was no error in the trial judge's ruling that the form was properly executed.

■ From the date of appellant's arrival in Tennessee until his trial began one hundred seventy-four days elapsed. When the delays sought by the appellant are excluded from the time computation, there are only seventeen days chargeable to the prosecution. Such a minimal delay does not amount to a denial of a speedy trial under the Compact.

■ Counsel contends that actions of the state forced them to seek continuances. For example, they contend that the incarceration of the appellant at the Tennessee

State Penitentiary rather than at the Montgomery County Jail forced them to seek a continuance. They further contend that the sending of certain fingerprint evidence to the crime laboratory also forced them to seek a continuance. If counsel were truly dissatisfied with these actions by the state, they could have sought orders from the court to have the appellant transferred to the local jail and to require the immediate production of the fingerprint evidence for their examination. Instead, they sought continuances. The appellant cannot now complain about the strategy followed by his counsel.

■ There is no authority for the Criminal Court of Montgomery County, Tennessee to compel Kentucky authorities to provide counsel for the appellant prior to his decision whether to execute documents required by the Compact. In *Hystad v. Ray*, 12 Wash.App. 872, 533 P.2d 409, 414–415 (1975), the Washington Supreme Court rejected the claim that the Sixth Amendment requires the appointment of counsel to contest extradition or transfer under the Detainer Act. Under *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2066, 32 L.Ed.2d 530 (1972), the right to appointed counsel is required only when a person may be subjected to a loss of liberty. Since the prisoner is already incarcerated, the Washington court noted, he can suffer no loss of liberty. We agree. There is no constitutional right to counsel at this early stage of an Interstate Compact on Detainers case. Our legislature has provided no statutory authority for appointment of counsel in a sister state. There was no right to counsel prior to execution of the request form.

We note that the appellant was counseled by a "resident legal aide" at the Resident Legal Service operated by the inmates at the Kentucky prison. While the record is silent as to his training in the law, it is obvious from one letter he wrote (which was introduced as part of an exhibit) that he was far more learned than the average "jail house lawyer." This issue has no merit.

■ While the request for temporary custody did not list the habitual criminal counts of the indictments, this did not void the appellant's transfer to Tennessee. The transfer forms require the listing of "offenses" with which the individual is charged. Habitual criminality is not an "offense", but rather is a "status" into which one can move upon conviction for the specified number of offenses. *Morelock v. State*, 2 Tenn.Cr.App. 423, 454 S.W.2d 189, 191 (1970). Article V(d) of the Compact provides:

> The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction. TCA, § 40–3901.

The habitual criminal counts were contained in the indictments and were "charges arising out of the same transaction." There were no errors in the transfer and trial of the appellant under the Interstate Compact on Detainers.

■ Next, the appellant contends that the court erred by refusing to order the state to produce all fingerprint evidence for his inspection *in Montgomery County* prior to the date of trial.

Latent fingerprints were lifted from a Kool cigarette carton following the crime. These were compared with known sets of appellant's prints. The state's fingerprint expert also took an additional set of fingerprints from the appellant two months before trial. Counsel knew of all of this evidence and six days before trial sought by motion to inspect the additional fingerprint evidence. However, the place of inspection was not mentioned in the motion. The motion was granted two days before trial, but without designating the place where the inspection would occur.

The fingerprint expert works at the Tennessee Crime Laboratory at Donelson. We note the close proximity of Clarksville to

Donelson. In view of the short distance involved, it would certainly not be unduly burdensome on counsel to travel to the laboratory to examine the evidence and to interview the prospective expert witness. This issue has no merit.

 In the next issue the appellant contends that it was error for the trial judge to refuse to provide him with a court appointed fingerprint expert to assist him in his trial preparation. He cites no authority for this proposition but seeks to analogize the appointment of a defense expert with the provision of the transcript at state expense. The latter was mandated by *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Appellate review of one's conviction is a fundamental right. The United States Supreme Court held that the denial of a transcript to an indigent defendant denied him equal protection of the law. There is no due process or equal protection requirement that a criminal defendant have a court appointed expert, except, of course, competent counsel, to assist him in evaluating the evidence against him. Two very able attorneys were appointed to represent the appellant. No more is required. This issue is meritless.

The appellant next contends that the in–court and out–of–court identification by a witness was erroneously admitted, since the out–of–court identification was unduly suggestive and this identification tainted his later in–court identification.

The key prosecution witness was shown a book of mugshots containing more than seventy photographs. He picked three which he thought looked like the man. However, none of these three photographs depicted the appellant. The Assistant District Attorney General then showed the witness the appellant's photograph and asked if this was the man. The witness refused to make an identification from the photo but said that he'd have to see the man in person. A line–up was arranged the following day with the appellant's counsel present. Two groups of men were exhibited to the witness with the appellant in the second group. The witness correctly chose the appellant.

The witness positively and unequivocally identified the appellant as the man he saw involved in the crime on September 6, 1977. He testified that his identification was based entirely on his observation at that time and on nothing else.

 We know of no decision of any appellate court which has approved a photographic show–up consisting of only one picture designated by the prosecutor as the accused. However, in this case there was no error in the admission of the witness' subsequent testimony. The witness refused to identify the appellant from the photograph, even when told that it was a picture of the man who was charged with the crime. The witness was absolutely positive in his identification and clearly stated that it did not stem from the tainted photographic show–up. There was no error in the admission of his testimony.

 In his next issue, the appellant contends that it was error to allow the introduction of a fingerprint card bearing inked fingerprints of the appellant, since the mere existence of the card implied to the jury that the appellant had a criminal record.

The fingerprint card was admitted into evidence but was not shown to the jury. The police officer who maintains the fingerprint records for the Clarksville Police Department testified that the mere existence of such a card does not denote the existence of a criminal record. He testified that his department has fingerprints of over fourteen thousand five hundred (14,500) people in its file. The fingerprint expert from the crime laboratory testified that the Federal Bureau of Investigation has fingerprints of over two hundred million (200,000,000) people in its files. The sheer enormity of these numbers would clearly indicate to the jury that others besides criminals have their fingerprints on file. It is common knowledge that, for example, all enlistees in the military services have their fingerprints recorded. It is quite likely that one or more jurors had been fingerprinted one or more times. As the record indicates, the existence of a record of one's fingerprints in the

files of the FBI or the local police department is neutral. It signifies neither criminality nor saintly living. There was no error in the admission of the card.

Next, the appellant contends that the court erred by failing to instruct the jury to disregard inflammatory and prejudicial remarks by the prosecutor in his closing argument. The objectional remarks were:

They pulled this robbery and then they head straight for that place, where they think they will be safe from detection. Where they think they will have all of the friends that you can see and they had some of those so you see. Now friends that is going to hide them and where no one can or will identify them. Kind of reminds me ladies and gentlemen–I don't mean this facetiously in any way, it reminds me of what my father used to tell me when we would try to bait the barn for rats. He would tell me there is no need now to put that bait or poison anywhere out in the middle of the barn, because that rat is not going to feed too far from his hole. Well, in this particular case–

MR. MITCHELL: Your Honor please, I object to that. I just think in a sense is calling this man a rat, and I don't think that is proper argument.

MR. BOBO: Your Honor, that is just a saying that my father had. I don't see how it cast any aspersions upon this man.

MR. MITCHELL: He knew full well what the implication of it was.

COURT: Well, I will overrule it, go ahead.

No further remarks were made concerning the similarity of the appellant to the rats in the prosecutor's father's barn.

■■■■ Argument of counsel is a valuable privilege that should not be unduly restricted. Our courts seek to give great latitude to counsel in expressing their views of the case to the jury. In support of this policy, trial judges have wide discretion in controlling the argument of counsel, and their action will not be reviewed absent abuse of that discretion. But the policy of allowing latitude to counsel in expressing

their view of a case does not mean there are no limits on argument. Argument must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried. *Russell v. State*, 532 S.W.2d 268, 271 (Tenn. 1976).

■■■ The challenged remark was certainly improper. This statement was intemperate, impertinent and there was no evidence in the record concerning the habits of the rats. However, this isolated remark cannot be said to have prejudiced the appellant or affected the jury's verdict. *State v. Sutton*, 562 S.W.2d 820, 827 (Tenn. 1978). The error was harmless beyond a reasonable doubt.

Next, the appellant challenges the trial judge's charge and handling of the jury in four particulars.

First, he contends that the trial judge supplied the part of the charge regarding the kidnapping in handwritten form while the balance of the charge was typewritten. This, he contends, caused the jury to put undue emphasis on this part of the charge.

Rule 30(c), T.R.Cr.P., provides that in felony cases every word of the judge's instructions shall be reduced to writing before being given to the jury. Earlier this was a statutory requirement of long standing. The rule does not require that the charge be in any particular form of writing. In *Pedigo v. State*, 191 Tenn. 691, 236 S.W.2d 89, 90 (1951), the Supreme Court found that a charge which contained incompetent and irrelevant matter, illegible interlineation and meaningless annotations might as well have been written in a foreign language and could serve no purpose except to confuse the jury.

■■■ There is no allegation that the charge was illegible or that the statement of the law was unclear in any way. A photostatic copy of the charge was not placed in the record so we are unable to evaluate the quality of the trial judge's penmanship. However, the inclusion of handwritten materials in an otherwise printed or typewritten charge is not error

unless it falls to the level of the writing described in *Pedigo v. State*, supra.

 The judge erred, the appellant contends, when he sent the jury back to the jury room to deliberate on the habitual criminal count in the second indictment when they failed to consider the issue. The trial judge has the authority to direct the jury to return to the jury room and continue their deliberation for the purpose of returning a complete verdict in conformity with the law. *Strunk v. State*, 209 Tenn. 1, 348 S.W.2d 339, 342 (1957). There was no error in this regard.

The judge failed, the appellant contends, to instruct the jury as to the presumption of innocence and the burden upon the state to prove guilt beyond a reasonable doubt with regard to the habitual criminal indictments.

The record reveals that in the enhancement phase of the trial the judge did charge the jury that the state must prove that the appellant is an habitual criminal beyond a reasonable doubt. He then referred the jury to his previous charge for the definition of "beyond a reasonable doubt" and the presumption of innocence. No objection was interposed and no special requests were submitted.

 Under Rule 30(b), T.R.Cr.P., the failure to object to the charge does not prejudice the right of a party to assign the basis of the objection as error in support of a motion for a new trial. The failure to object did not, therefore, amount to a waiver. However, the instructions as given were correct and, when read in conjunction with the prior charge, was a complete statement of the applicable law. Had the appellant desired further instructions, he should have submitted a special request. *Lackey v. State*, 578 S.W.2d 101, 108 (Tenn.Cr.App. 1978). There was no error.

 The last challenge to the charge is the contention that the court's instructions with regard to the habitual criminal counts were such that, for all practical purposes, the jury was precluded from rendering a verdict of not guilty. The charge gave the jury the option of finding the appellant guilty or not guilty. This issue has no merit.

 Finally, the appellant contends that TCA, § 40-2801, et seq., the habitual criminal statutes, are unconstitutional under the United States and Tennessee Constitutions. This argument has been rejected time and again. These statutes are constitutional under both constitutions. *Glasscock v. State*, 570 S.W.2d 354, 355 (Tenn.Cr.App. 1978).

Finding no merit to any of the issues raised by the appellant, the judgment is affirmed.

O'BRIEN and BYERS, JJ., concur.